UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

_____

№ 05-CV-2585 (JFB)(LB)
_____

DARLINGTON AMADASU,

Plaintiff,

VERSUS

SEMA FELIX NGATI; LAW OFFICES
OF S. FELIX NGATI; ERIC ABAKPORO
A/K/A I. ERIC ABAKPORO; LAW OFFICES OF ERIC ABAKPORO;
MAURICE GARBER; GARBER & COMPANY, P.C.,

Defendants.

_____

MEMORANDUM AND ORDER
March 27, 2006
_____

JOSEPH F. BIANCO, District Judge:

On May 20, 2005, plaintiff filed this action *pro se* alleging various federal and state law claims primarily concerning state court litigation subsequent to the termination of his employment at Bronx Lebanon Hospital in 1993. By Order dated October 6, 2005, plaintiff was directed to file an amended complaint.[1] After an extension of time was afforded, plaintiff timely filed an amended complaint on November 21, 2005.[2] The Court grants plaintiff's request to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915. The Court dismisses the 42 U.S.C. §§ 1981, 1985, 1986 and constitutional claims against all defendants. With the exception of a malpractice claim against defendant Ngati and his firm and a malpractice claim against defendant Abakporo and his firm, all of the state law claims are dismissed as redundant of plaintiff's legal malpractice claim or barred by the relevant statute of limitations. The Court directs service upon the remaining defendants as detailed below.

---

[1] The Court notes that *in forma pauperis* status was granted solely for the purpose of the October 6, 2005 Order. Service by the United States Marshal's Office was not ordered before the entry of the instant Order. *See* Conclusion below.

[2] The case was re-assigned to this Court on February 7, 2006.

## I. STANDARD OF REVIEW

In reviewing plaintiff's complaint, the Court is mindful that because plaintiff is proceeding *pro se,* his submission should be held "to less stringent standards than formal pleadings drafted by lawyers." *Hughes v. Rowe*, 449 U.S. 5, 9 (1980). Under 28 U.S.C. § 1915 (e)(2)(B), a district court shall dismiss an *in forma pauperis* action where it is satisfied that the action is "(i) frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." An action is "frivolous" when either: (1) "the factual contentions are clearly baseless, such as when allegations are the product of delusion of fantasy," or (2) "the claim is 'based on an indisputably meritless legal theory.'" *Livingston v. Adirondack Beverage Co.*, 141 F.3d 434, 437 (2d Cir. 1998) (internal citations and quotations omitted). A claim is based on an "indisputably meritless legal theory" when either the claim lacks an arguable basis in law, *Benitez v. Wolff*, 907 F.2d 1293, 1295 (2d Cir. 1990) (*per curiam*), or a dispositive defense clearly exists on the face of the complaint. *See Pino v. Ryan*, 49 F.3d 51, 53 (2d Cir. 1995).

## II. BACKGROUND

### A. Plaintiff's Allegations

Plaintiff was terminated from his position as a medical resident at Bronx Lebanon Hospital ("the Hospital") on September 21, 1993 by Dr. Margaret Rosenberg ("Rosenberg"), director of the Family Practice Residency Program, for the "inappropriate and unprofessional treatment of a 13-yr-old female patient [who was brought to the hospital by her grandmother, Mabel Brevett ("Brevett")] in violation of established medical procedures and legal requirements." (Compl. ¶ 15.) The termination "subsequently gave rise to a chain of lawsuits." (*Id.* ¶ 10.)

The first action related to the termination was filed on or about March 21, 1994 in the New York Supreme Court, Bronx County, by plaintiff against the hospital and Rosenberg for "*inter alia* breach of contract, wrongful termination, defamation, etc." (*Id.* ¶ 16.) Plaintiff hired two different attorneys to represent him in this action, both of whom "disappeared with the monies [paid into escrow] without a trace." (*Id.* ¶¶ 18-19.) Neither of these attorneys is named in the instant action.

In or about December 1994, the minor and Brevett filed a medical malpractice action against plaintiff in New York Supreme Court, Bronx County. (*Id.* ¶ 20.) In July or August 1995, plaintiff hired attorney defendant Maurice Garber ("Garber") to represent him in both actions in state court: plaintiff's wrongful termination case and defense of the medical malpractice action." (*Id.* ¶ 23.) In 1997, plaintiff's wrongful termination action was dismissed by the state court for failure to prosecute the action, but Garber concealed this information from plaintiff. (*Id.* ¶ 27.) In or about May 1998, "within the Brevett/[minor]-suit[] evolved a third-party lawsuit" by the Hospital against the Institute for Urban Family Health, Inc. ("IFUH") which was a co-sponsor of the "family practice residency program from which plaintiff was discharged." (*Id.* ¶¶ 28, 35.) Plaintiff maintains that within this lawsuit, IFUH's position exculpated plaintiff. (*Id.* ¶ 29.)

On or about May 24, 1999, Garber informed plaintiff that he would no longer

represent him. (*Id.* ¶ 30.) Plaintiff hired a new lawyer, defendant Felix Ngati ("Ngati") who, on or about June 1, 1999, re-filed the previously dismissed wrongful termination action, adding some additional personal injury claims. In July 1999, plaintiff left New York for "a program" in Ohio. (*Id.* ¶ 80.)

### 1. Claims against Garber

Plaintiff alleges that, on September 9, 1995, he entered into two agreements with Garber. In order to represent plaintiff in the wrongful termination action, plaintiff entered into "a contingent-fee agreement" whereby Garber would recover one-third of any monies awarded plaintiff. (*Id.* ¶ 42.) Plaintiff was obligated to deposit a total of $2000 into escrow for necessary fees, but only paid $500 of this money. (*Id.* ¶ 43.) Plaintiff maintains that Garber belatedly filed a notice of appearance in Spring 1996, but thereafter utterly failed to prosecute the case and, after the trial court dismissed the action "in or about 1997," broke his promise to appeal the dismissal. (*Id.* ¶¶ 44-8; 53-55.) Plaintiff also seeks to recover the $500 he deposited in escrow with Garber. (*Id.* ¶ 56.)

For his representation of plaintiff in the medical malpractice action, Garber was to be paid by the FOJP Service Corporation, a malpractice liability insurance company. (*Id.* ¶ 57.) "Garber and FOJP finalized the third party payment agreement and plaintiff was the beneficiary of the agreement. Garber collected payment f[rom] the FOJP for none or negligent services." (*Id.*) Plaintiff alleges that Garber's performance was inadequate as he failed to file a notice of appearance until Spring 1996, failed to appear at a deposition of Gustave and Bennett scheduled for October 2, 1996, despite the court's warning that if he failed to appear on that date his right to depose those witnesses would be waived, (*id.* ¶ 62), and ultimately "abandoned" the case on May 24, 1999.

### 2. Claims against Ngati

Plaintiff alleges that, on May 28, 1999, he entered into a contingent-fee agreement whereby Ngati would assume representation of plaintiff in the two actions and recover one-third of any monies awarded to plaintiff. (*Id.* ¶ 71.) On May 31, 1999, plaintiff paid $2000 toward Ngati's requested $5000 escrow account to pay the costs and fees of re-filing the "dismissed but still viable claims and other claims" in state court. (*Id.* ¶¶ 72-76.) Plaintiff alleges that, despite Ngati's stated displeasure with plaintiff's previous lawyers and his representation that he was qualified for the job, he also failed to prosecute plaintiff's wrongful termination action. (*Id.* ¶¶ 69,77-154.) Plaintiff alleges that Ngati failed him in many ways including relinquishing his responsibility to prepare pleadings to plaintiff, failing to appear at a deposition, extorting money from him, failing to keep him apprised of developments in the case, verbally abusing him on the telephone and ultimately misrepresenting their relationship and fee arrangement when seeking permission of the court to withdraw from representing plaintiff. (*Id.*) Their relationship ended on September 27, 2002. (*Id.* ¶ 131; Amend. Compl.¶ 4.)

### 3. Claims against Abakporo

Plaintiff's claims against Eric Abakporo ("Abakporo") involve older and different state court litigation. In March 1991, plaintiff filed two actions *pro se*: the first against Integrity Medicals regarding medical equipment; and the second against two physicians for "breach of independent of contractor agreement." (Compl. ¶ 155.) On July 22, 1991, plaintiff

3

hired Abakporo to represent him in both actions.

The action filed in New York State Court, Queens County, against Integrity Medicals sought to recover money for equipment for which plaintiff paid, but never received. Plaintiff entered into an attorney-client contingent-fee agreement whereby Abakporo would recover one-third of any monies awarded to plaintiff in the action. (*Id.* ¶ 157.) Plaintiff maintains that the action was settled and Abakporo recovered his fee, but plaintiff has not received a portion of the equipment or monies to which he was entitled. (*Id.* ¶ 158.)

As to the action against the physicians, plaintiff maintains that he agreed to pay a one-time fee to Abakporo of $1500 for legal representation. (*Id.* ¶¶ 159-60.) In or about October 1992, judgment by default was entered against the defendant doctors in the amount of $20,132.00, but a dispute over fees precluded its collection. (*Id.* ¶¶ 164-65.) Thereafter, the default judgment was vacated, and from 1993 through at least 1998, the case was repeatedly restored and removed from the trial calendar and Apakporo repeatedly misplaced plaintiff's case file. (*Id.* ¶¶ 166-203.)

Plaintiff left New York for Utah in the fall of 1998 and his efforts to contact Abakporo from out of state thereafter were unsuccessful. (*Id.* ¶¶ 206, 208.) Upon plaintiff's return visits to New York in 2000, 2003 and 2004, he was assured that "settlement negotiation and stay of trial were still ongoing and that he would send a status report to plaintiff." (*Id.* ¶ 209.) Plaintiff did not receive the promised updates on the case and had his last contact with Abakporo on March 25, 2005, when Abakporo informed plaintiff that the "case was dead and buried." (*Id.* ¶ 210.)

Additionally, plaintiff seeks to hold Abakporo responsible for a real estate transaction that went awry. Plaintiff alleges that Abakporo drafted and was a "guarantor and witness" to a one-year lease contract between plaintiff and Ms. Ivy Cooper ("Cooper") which was breached in 1992. (*Id.* ¶ 215.) Plaintiff obtained a judgment against Cooper in housing court, but he has been unable to collect. (*Id.* ¶ 221.) Plaintiff maintains that Abakporo is responsible for recovering these funds. (*Id.* ¶¶ 222-23.)

B. Plaintiff's Federal Litigation History

The Court relates plaintiff's state court litigation history not only because it is relevant to plaintiff's claims, but also because it illustrates a pattern of obfuscation repeated in the submissions to this Court. Although unclear from plaintiff's complaint, his wrongful termination action against the hospital and Dr. Rosenberg was ultimately decided in 2004. *See Amadasu v. Bronx Lebanon Hosp. Ctr. Inc.*, 10 A.D.3d 571, 782 N.Y.S.2d 82 (1st Dep't 2004) (plaintiff's "termination, based on his inappropriate and unprofessional treatment of a 13-year-old female patient during an unauthorized pelvic examination, was neither arbitrary nor capricious, and was clearly in accordance with the residency contract pursuant to which termination of a resident was authorized for behavior deleterious to the Hospital or the Hospital's patients.") (citations omitted).

In addition to the state court actions referenced in his complaint and an action filed in this court,[3] plaintiff has also litigated two

---

[3] In 1997, the Committee of Interns and Residents and various individual defendants removed a case filed by plaintiff in the Supreme Court of the State of New York, Kings County to this Court.

*pro se* cases in federal court, both of which did not proceed smoothly and were dismissed. In one, he inundated the district court with lengthy and meritless motions and objections in violation of individual rules, *Amadasu v. Rosenberg, M.D. et al.*, No. 03-CV-6450, 2005 WL 954916, at *1 (S.D.N.Y. Apr. 26, 2005) and, in another, frustrated the court with his inability or refusal to comply with the court's rules regarding discovery. *Amadasu v. University of Utah*, No. 02-CV-4236, 92 Fed. Appx. 766, 769 (10th Cir. Mar. 25, 2004) (the Tenth Circuit affirmed the district court's dismissal of Amadasu's complaint).

1. S.D.N.Y. Action

On August 25, 2003, while the state action was still pending, plaintiff filed a *pro se* complaint in the United States District Court, Southern District of New York ("Southern District") alleging discrimination, retaliation, fraud and conspiracy against, among others, the Hospital, the residency program, five employees of those entities, various law firms and lawyers who represented the Hospital in plaintiff's state court action, the patient who sued the Hospital for malpractice because of plaintiff's alleged misconduct, and others connected to her. *See Amadasu v. Bronx Lebanon Hospital*, No. 03-CV-6450, 2005 WL 121746, at *1-*2 (S.D.N.Y. Jan. 21, 2005) (Report and Recommendation). In an Order dated January 23, 2004, and thereafter in a conference held on February 23, 2004, Magistrate Judge Peck noted that the complaint was lengthy and that it was not clear which defendants were being sued on which claims and "'strongly advised' Amadasu to prepare an amended complaint, making clear which defendants are named as to each cause of action and when the events relating to that claim occurred, so the court could determine whether the claim is barred by the statu[]e of limitations." *Id.*; *see also Amadasu v. Rosenberg M.D. et al.*, No. 03-CV-6450, 2004 WL 925811, at *1 (S.D.N.Y. Apr. 30, 2004) (affirming Magistrate Peck's orders denying default judgment motions and order to amend complaint) (quoting February 23, 2004 Transcript at 6-7). Plaintiff's motions for judgment on the pleadings and judgment by default were repeatedly denied by the Magistrate Judge and affirmed by the district court. Plaintiff filed an amended complaint as directed by the court, but defendants' motion to dismiss the action was granted on statute of limitations and former adjudication grounds and the action dismissed. *Amadasu*, 2005 WL 954916, at *1-*2.

2. Utah Action

Plaintiff's *pro se* action in the United States District Court for the District of Utah, a multi-claim employment-related action involving different parties and claims, was dismissed by the District Court with prejudice pursuant to Fed. R. Civ. P. 37 (b)(2) for willful and repeated discovery abuse. In affirming the dismissal, the Tenth Circuit summarized the missteps that culminated in the dismissal of plaintiff's action:

> Proceedings in district court did not go smoothly. Mr. Amadasu served discovery requests in excess of the number established by the scheduling order, attempted to add eleven new parties and eleven new claims after the

---

*Amadasu v. Committee of Interns and Residents*, 97-CV-4965 (RJD). By Stipulation and Order dated September 30, 1999, the case was dismissed and defendants' motions for Rule 11 sanctions and summary judgment were withdrawn. *Id.,* docket entry no. 28.

5

deadline for amending the complaint, and filed numerous motions alleging conspiracy on the part of the magistrate judge, defense counsel, the court reporter, and the court reporting service. Additionally, Mr. Amadasu failed to timely respond to defendants' motions and failed to appear for two noticed hearings. Moreover, he did not fully respond to defendants' requests for discovery even after being warned that the court would consider dismissing the complaint unless he answered the interrogatories and produced all the documents responsive to defendants' discovery requests.

*Amadasu v. University of Utah*, 92 Fed. Appx. at 769.

### 3. Instant Complaint

In the instant action, plaintiff's initial complaint possessed the same infirmity that plagued the Southern District action: it was difficult to ascertain which defendants were named as to each cause of action and when the events relating to that claim occurred, so that the Court could determine whether the claims are barred by the statute of limitations and whether plaintiff has stated a claim under the multifarious causes of action. The original complaint suffered a further infirmity in that it seemed the Court lacked subject matter jurisdiction because the amount in controversy did not exceed the statutory minimum. Therefore, plaintiff was afforded the opportunity to amend his complaint to address these concerns.

Although the amended complaint does clarify the jurisdictional amount in controversy and the statute of limitations questions, it remains difficult to ascertain if plaintiff has stated a claim under each of the twenty-one counts he has alleged. Thus, the Court will review each cause of action to determine if plaintiff has stated a claim on which relief may be granted and whether the claim is timely.

### III. DISCUSSION

Like most of plaintiff's previous actions in state court and his actions here and in the Southern District, this case involves his termination from the Hospital and lawsuits which were spawned by it, plus a few unrelated landlord-tenant and contract matters. This time, however, plaintiff seeks to recover damages from the attorneys *he* hired to represent him in these various actions. He feels that the three named lawyers individually, and their law firms, mishandled monies and did an inadequate job of providing him with the opportunity of "being heard, clearing his name; regaining his good name, honor, enjoyment of life, chosen profession, and reputation that plaintiff's employer had destroyed without just cause; and property right to bring a civil action for personal injuries and property interest in personal injury claims against the hospital thereof." (Amend. Compl. ¶ 95.)

### A. Subject Matter Jurisdiction

The subject matter jurisdiction of the federal courts is limited. Federal jurisdiction is available only when a "federal question" is presented, 28 U.S.C. § 1331, or when the plaintiff and defendant are of diverse citizenship and the amount in controversy exceeds $75,000.00. 28 U.S.C. § 1332. "The absence of such jurisdiction is non-waivable; before deciding any case we are required to assure ourselves that the case is properly within our subject matter jurisdiction." *Wynn*

6

*v. AC Rochester*, 273 F.3d 153, 157 (2d Cir. 2001).

1. Claims Invoking the Court's Federal Question Jurisdiction

a. Claims under 42 U.S.C. §§ 1981, 1985, and 1986

Plaintiff alleges that this Court has federal question jurisdiction pursuant to 42 U.S.C. §§ 1981, 1985, and 1986. (Amend. Compl. at ¶ 7.) Although the Court has jurisdiction over these claims, plaintiff fails to state a claim on which relief may be granted under any of these sections.

To state a claim under § 1981, plaintiff must allege facts in support of the following three elements: (1) he is a member of a racial minority; (2) an intent to discriminate on the basis of his race by defendant; and (3) the discrimination concerned one or more activities enumerated in the statute, *e.g.,* making contracts or the purchase of personal property. *See Mian v. Donaldson, Lufkin & Jenrette Securities*, 7 F.3d 1085, 1087 (2d Cir. 1993). In order to satisfy the second element, plaintiff must allege that defendants' actions were purposefully discriminatory and racially motivated. *Gen. Bldg. Contractors Ass'n v. Pennsylvania*, 458 U.S. 375, 391 (1982) (Section 1981 can be violated only by intentional discrimination). The events of intentional and purposeful discrimination, as well as the racial animus constituting the motivating factor for defendants' actions, must be specifically pleaded in the complaint. *See Yusuf v. Vassar College*, 827 F. Supp. 952, 955 (S.D.N.Y. 1993) *aff'd in part. rev'd in part on other grounds*, 35 F.3d 709 (1994).

Plaintiff's allegations of racial animus here are wholly conclusory. Plaintiff's failure to allege purposeful discrimination or animus is fatal to his Section 1981 claim.[4] Thus, plaintiff fails to state a claim on which relief may be granted under 42 U.S.C. § 1981. *See* 28 U.S.C. § 1915 (e)(2)(B)(ii).

Nor has plaintiff stated a claim under 28 U.S.C. § 1985(3). A claimant seeking to establish a § 1985(3) liability must allege: "(1) a conspiracy; (2) for the purpose of depriving, either directly or indirectly, any person or class of persons of equal protection f the laws, . . . [and] (3) an act in furtherance of the conspiracy; (4) whereby a person is . . . deprived of any right of a citizen of the United States." *Brown v. City of Oneonta*, 221 F.3d 329, 341 (2d Cir. 2000) (citation and quotation marks omitted). The Second Circuit has also held that a § 1985(3) conspiracy "must be motivated by some racial or perhaps otherwise class-based, invidious discriminatory animus." *Mian*, 7 F.3d at 1088 (2d Cir. 1993) (internal quotation marks omitted); *see also Thomas v. Roach*, 165 F.3d 137, 146 (2d Cir. 1999).

Plaintiff's Section 1985 claim fails because he does not allege any facts that would permit the Court to conclude or infer that the named defendants were conspiring or that he was targeted on account of his race. Plaintiff suggests no facts from which the Court or anyone else would be able to infer discriminatory intent on the part of any defendant. Therefore, the Court dismisses

---

[4] Plaintiff was also afforded the opportunity to amend his complaint to state a claim under 42 U.S.C. § 1981 to identify intentional discrimination. Order at 2-3 ("Plaintiff should identify the offending conduct, who was responsible for the offending conduct and when and where the conduct occurred."). Plaintiff has failed to do so.

plaintiff's Section 1985 conspiracy claim against all defendants. 28 U.S.C. § 1915 (e)(2)(B)(ii).

Plaintiff also fails to state a claim under Section 1986. A cause of action under § 1986 may be brought against anyone who had power to prevent or aid in a wrong actionable under Section 1985 and neglected to do so. *Mian*, 7 F.3d at 1088. Here, plaintiff's failure to state a claim under Section 1985 is fatal to his Section 1986 claim. *Id.*; 28 U.S.C. § 1915 (e)(2)(B)(ii). Accordingly, the Court dismisses the claims under 42 U.S.C. §§ 1981, 1985, and 1986.

### b. Alleged Constitutional Violations

Plaintiff seeks federal question jurisdiction in one other claim of his complaint. Count 17 alleges that the defendants violated plaintiff's constitutional rights under the First, Fifth, Sixth, and Seventh Amendments. (Compl. ¶¶ 287-291; Amend. Compl. ¶¶ 92-96.) Specifically, plaintiff alleges that by "their failure and refusal to prosecute or litigate plaintiff's lawsuits resulting in dismissal," plaintiff was deprived "of the rights of access to the Courts, to redress, to confront accuser, to procedural and substantive due process and jury trial." (Amend. Compl. ¶ 94.) A constitutional claim in and of itself is not sufficient to confer jurisdiction where such a claim is nothing more than a state court claim "recloaked in constitutional garb." *Anderson v. Bowen*, 881 F.2d 1, 5 (2d Cir. 1989). Plaintiff has unsuccessfully attempted to re-characterize his legal malpractice claim as violations of the Constitution. Plaintiff's "bald assertion that [] defendants violated numerous amendments to the Constitution, without any elaboration, fails to state any cause of action as a matter of law." *Estes v. Doe*, No. 97 Civ. 8133, 1999 WL 983886, at *6 (S.D.N.Y. Oct. 29, 1999); *see also, Bell v. Hood*, 327 U.S. 678, 682-83 (1946) (A claim invoking federal-question jurisdiction may be dismissed for want of subject-matter jurisdiction if it is not colorable, *i.e.*, if it is "immaterial and made solely for the purpose of obtaining jurisdiction" or is "wholly insubstantial and frivolous."); *Sullivan v. Stein*, No. 03 CV 1203, 2004 WL 1179351, *19 (D. Conn. May 21, 2004) (Plaintiff's allegations may state a claim under state law for legal malpractice, but they cannot support a claim under § 1983 for violations of the Fourth, Fifth and Fourteenth Amendments.). Accordingly, Count 17 is dismissed.

### 2. Diversity Jurisdiction

Plaintiff seeks to invoke this Court's diversity jurisdiction over his state law claims, the only remaining claims. Parties seeking to invoke diversity jurisdiction must be of diverse citizenship and the amount in controversy must exceed the sum or value of $75,000, exclusive of costs and interest. 28 U.S.C. § 1332. The amount in controversy requirement of section 1332(a) is determined at the time the complaint is filed. *Scherer v. Equitable Life Assurance Soc'y of U.S.*, 347 F.3d 394, 397 (2d Cir. 2003). There is a presumption that the face of a complaint is a good faith representation of the actual amount in controversy, which presumption can only be rebutted by showing to "a legal certainty that the amount recoverable does not meet the jurisdictional threshold." *Id.* "In determining whether a challenged jurisdictional amount has been met, district courts are permitted only to assess the allegations in a complaint and not the validity of any asserted defenses." *Ochoa v. Interbrew America, Inc.*, 999 F.2d 626, 629 (2d Cir. 1993).

In its October 6, 2005 Order, the Court afforded plaintiff an opportunity to amend the complaint to allege facts to support the jurisdictional amount in controversy. In his amended complaint, plaintiff alleges:

> The compensatory, restitutionary and punitve damages amounts in controversy exclusive of interest and costs exceed $75,000 in that the actions or inactions of defendants, particularly Ngati and Garber, prevented plaintiff from recovering from the hospital the damages consisting of, *inter alia*, plaintiff's reasonable past and future lost earnings or services as a multi-skilled versatile medical doctor from lost positions or impairment of past and future earnings capacity and economic opportunities for a minimum base earnings of $350,000 per year, and minimum bonus of $150,000 per year for a minimum estimate total of $500,000 per each year in compensation from the positions and or economic opportunities he would have enjoyed as a versatile specialist medical doctor had his training, employment and economic advantages not wrongfully impaired by the hospital. Plaintiff's medical expenses recoverable from the hospital and the defendants would exceed the required amount.

(Amend. Compl. ¶ 9.)

Thus, based on plaintiff's good faith representation of the actual amount in controversy, plaintiff's claims exceed the jurisdictional amount.

B. State Law Claims

Despite plaintiff's broad array of allegations (235 paragraphs) and causes of action (twenty-one), the crux of his complaint is malpractice against three lawyers. "A diversity action based on attorney malpractice is a matter of state substantive law." *Barry v. Liddle, O'Connor, Finkelstein & Robinson*, 98 F.3d 36, 39 (2d Cir. 1996). Accordingly, the Court applies New York law in this action. *Id.*

1. Redundant State Law Claims

In his complaint and amended complaint, plaintiff variously styles his legal malpractice claims as:

| | |
|---|---|
| Count 1 | Breach of Contracts . . . (Litigation Agreements) |
| Count 2 | Breach of Contracts . . . (Money Deposit or Escrow Agreement) |
| Count 3 | Breach of Contracts against Defendant Abakporo (Lease Agreement) |
| Count 4 | Continuing Negligence against Ngati & Abakporo (Attorneys Malpractices) |
| Count 5 | Breach of Derivative Contract against Defendant Garber and GCPC (Third-Party Agreements) |
| Count 6 | Continuing Breach of Fiduciary and Covenant of Good Faith and Fair Dealing |
| Count 8 | Intentional Misrepresentations Against All Defendants Severally |

9

Count 9   Negligent Misrepresentation
Count 10  Conversion and Embezzlement
Count 11  Actual and Constructive Fraud
Count 13  Negligence Performance of the Contracts
Count 14  Promissory Estoppel[]
Count 15  Unjust Enrichment
Count 16  Gross Negligence

(Amend. Compl. ¶¶ 7-14.)

a. Claims Subsumed by Breach of Contract

Plaintiff has provided multiple characterizations for essentially two claims: breach of contract and legal malpractice. In addition to counts one, two, three and five labeled breach of contract, the following claims are subsumed by the breach of contract claim: (1) breach of the covenant of good faith and fair dealing (Count 6), *Harris v. Provident Life & Accident Ins. Co.*, 310 F.3d 73, 81 (2d Cir. 2002) (New York law . . . does not recognize a separate cause of action for breach of the implied covenant of good faith and fair dealing when a breach of contract claim, based upon the same facts, is also pled.); *TVT Records v. Island Def Jam Music Group*, 244 F. Supp. 2d 263, 277 (S.D.N.Y. Feb 13, 2003) (Courts in this district have consistently dismissed claims for breach of the implied covenant of good faith as "redundant where the conduct allegedly violating the implied covenant is also the predicate for breach . . . of an express provision of the underlying contract."); *see also Alter v. Bogoricin*, No. 97 CV 0662, 1997 WL 691332, at * 7 (S.D.N.Y. Nov. 06, 1997) ("[E]very court faced with a complaint brought under New York law and alleging both breach of contract and breach of a covenant of good faith and fair dealing has dismissed the latter claim as duplicative"); (2) unjust enrichment (Count 15), *Elias v. Albanese*, No. 00 CV 2219, 2000 WL 1182803, at *4 (S.D.N.Y. Aug 21, 2000) (plaintiff's unjust enrichment claim must be dismissed because the relationship with, and rights against defendant are fully governed by written contracts, thereby precluding the equitable remedy of unjust enrichment) (citing *Clark-Fitzpatrick, Inc. v. Long Island Rail Road Co.*, 70 N.Y.2d 382, 388 (1987));[5] and (3) promissory estoppel (Count 14). As to the promissory estoppel claim, plaintiff alleges that defendants made promises to provide the reasonable and customary legal services provided by competent attorneys and that he relied on these promises to his detriment. Promissory estoppel sounds in contract theory. Restatement (Second) of Contracts § 90 (1981). The promissory estoppel claim is likewise redundant and is therefore dismissed. *See Ciocca v. Neff*, No. 02 CV 5067, 2005 WL 1473819, at *6 (S.D.N.Y. June 22, 2005). Accordingly, Counts 14 and 15, as well as the breach of good faith and fair dealing claim in Count 6, are dismissed.

b. Claims Redundant of Legal Malpractice Claim

Further, plaintiff's claims for breach of contract, breach of fiduciary duty, negligent misrepresentation, negligent performance, and gross negligence merge into plaintiff's legal malpractice claim. *See Seippell v. Jenkens & Gilchrist*, 341 F. Supp. 363, 376 (S.D.N.Y. 2004). New York law holds that, where a breach of contract or breach of fiduciary duty

---

[5] There is one claim not based on an attorney-client agreement (Abakporo as guarantor on Cooper lease), but it is barred by the statute of limitations.

10

claim is premised on the same facts and seeks relief identical to that sought in a legal malpractice cause of action, such claims are redundant and should be dismissed. *See InKine Pharm. Co. v. Coleman*, 759 N.Y.S.2d 62 (1st Dep't 2003) ("The breach of contract and breach of fiduciary duty claims were properly dismissed as duplicative, since they arose from the same facts as the legal malpractice claim and allege similar damages.") (citing *Sonnenschine v. Giacomo*, 744 N.Y.S.2d 396 (1st Dep't 2002)); *Estate of Nevelson v. Carro, Spanbock, Kaster & Cuiffo*, 736 N.Y.S.2d 668 (1st Dep't 1999). Here, the malpractice and breach of contract claims arise from the same facts and alleged legal obligations concerning defendants' representation of plaintiff in various legal actions. "Moreover, under New York law, where no express promise was made in a retainer agreement to obtain a specific result, a breach of contract claim is a redundant pleading of a legal malpractice claim. *O'Shea v. Brennan*, No. 02 CV 3396, 2004 WL 1118109, at *3 (S.D.N.Y. May 19, 2004) (citing *Calcutti v. SBU, Inc.*, 224 F. Supp. 2d 691, 701 (S.D.N.Y. 2002)). The defendants herein made no promise of a specific result. Plaintiff"s claims of breach of contract and breach of fiduciary duty are redundant of the legal malpractice claim, and are therefore dismissed.

Likewise, legal malpractice, as opposed to ordinary negligence, is the appropriate cause of action to bring against an attorney who allegedly performed his/her professional duties negligently. *See Marks Polarized v. Solinger & Gordon* 476 N.Y.S.2d 743, 744 (N.Y. Sup. Ct. 1984) ("Legal malpractice, like other forms of professional malpractice, is a species of negligence. As such, its general elements are (1) negligence, (2) which is the proximate cause of (3) damages."). Plaintiff's claim for gross negligence is also redundant of his legal malpractice claim and is dismissed. *See, e.g., Schwartz v. Olshan Grundman Frome & Rosenzweig*,753 N.Y.S.2d 482, 487 (1st Dep't 2003) (Plaintiff's breach of contract and negligent misrepresentation claims were properly dismissed by the motion court as redundant of the malpractice cause of action).

Thus, plaintiff's state law claims of breach of contract (all counts), breach of fiduciary duty, negligent misrepresentation, negligent performance, and gross negligence merge into the malpractice claim. These claims are redundant. The claims arise from the same conduct – the defendant attorneys' alleged breach of the duties of "honest, good faith, fairness, integrity, fidelity, and reasonable care," (Compl. ¶ 226)– and involve no distinct damages. *See Harleysville Worcester Ins. Co. v. Hurwitz*, No. 02 CV 7612, 2005 WL 774166, at *5 (S.D.N.Y. Apr. 6, 2005) (citing *Mecca v. Shang*, 685 N.Y.S.2d 458 (2d Dep't 1999) (dismissing breach of fiduciary duty, negligent misrepresentation, gross negligence, and fraud claims "since these claims ... arise from the same facts as [plaintiff's] legal malpractice claim and do not allege distinct damages") and *Nevelson*, 736 N.Y.S.2d 670 (dismissing breach of contract and breach of fiduciary duty claims as duplicative since they were "predicated on the same allegations and seek relief identical to that sought in the malpractice cause of action."). Accordingly, Counts 1, 2, 3, 9, 13, 16, and the breach of fiduciary claim in Count 6, are dismissed.

2. Failure To State A Claim

a. Intentional Misrepresentation/Fraud

The Court finds plaintiff fails to state a claim with regard to plaintiff's eighth and

eleventh causes of action sounding in fraud/intentional misrepresentation. Where, as here, a fraud claim is asserted in connection with a claim for professional malpractice, the plaintiff must, in addition to pleading the traditional elements of intentional fraud, *i.e.*, "misrepresentation of a material existing fact, falsity, scienter, deception and injury," *Callahan v. Callahan*, 514 N.Y.S.2d 819 (3rd Dep't 1987), allege that "it failed to pursue an available remedy which would have corrected or alleviated the condition caused by the malpractice had it not been diverted from doing so by its reliance upon [the] defendant's alleged misrepresentation." *St. Alexander's Church v. McKenna*, 697, 742 N.Y.S.2d 165, 167 (3rd Dep't 2002). Stated another way, a fraud claim in this regard "is sustainable only to the extent that it is premised upon one or more affirmative, intentional misrepresentations--that is, something more egregious than mere 'concealment or failure to disclose [one's] own malpractice' . . . which have caused additional damages, separate and distinct from those generated by the alleged malpractice." *White of Lake George v. Bell*, 674 N.Y.S.2d 162, 162 *appeal dismissed by* 681 N.Y.S.2d 477 (3rd Dep't 1998) (quoting *LaBrake v. Enzien*, 562 N.Y.S.2d 1009, 1011 (3rd Dep't 1990) (citations omitted)).

Plaintiff has not alleged any distinct conduct. The mere allegation that "a defendant did not intend to perform a contract with a plaintiff when he made it" generally fails to state a claim for fraud, however, and will be dismissed as duplicative under New York law. *Gordon v. Dino De Laurentiis Corp.*, 529 N.Y.S.2d 777, 779 (1st Dep't.1988); *see also PI, Inc. v. Quality Prods., Inc*., 907 F. Supp. 752, 761-62 (S.D.N.Y. 1995) (collecting New York cases). Thus, plaintiff's intentional misrepresentation claims are dismissed for failure to state a claim on which relief may be granted. *See* 28 U.S.C. § 1915 (e)(2)(B)(ii). Accordingly, Counts 8 and 11 are dismissed.

### b. Intentional Infliction of Emotional Distress

Plaintiff's claim of intentional infliction of emotional distress (Count 12) fails to state a claim on which relief may be granted. To establish such a claim, a plaintiff must show that the defendant engaged in 1) extreme or outrageous conduct, 2) with the intent to cause, or in disregard of a substantial probability of causing, severe emotional distress, 3) causal connection between the conduct and the injury, and 4) severe emotional distress. *See Howell v. New York Post Co.*, 81 N.Y.2d 115, 121-22, 596 N.Y.S.2d 350 (1993) (liability exists "only where the conduct has been so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in 'civilized community'") (quoting *Murphy v. American Home Products Corp.*, 461 N.Y.S.2d 232, 236 (1983)). Because plaintiff has alleged no basis upon which a fact-finder could rationally conclude that the defendants engaged in extreme or outrageous conduct, his claim is dismissed. 28 U.S.C. § 1915 (e)(2)(B)(ii); *see also Schonberger v. Serchuk*, 742 F. Supp. 108, 120 (S.D.N.Y. 1990) (New York law does not traditionally permit claims for negligent infliction of emotional distress within an ordinary legal malpractice claim). Accordingly, Count 12 is dismissed.

### c. Conversion and Embezzlement

Plaintiff also alleges that the defendants failure to return the monies he had paid as

deposits into their escrow accounts constitutes conversion and embezzlement. The claim of failure to return the money has been dismissed as redundant of his malpractice claim and cloaking it under a claim of conversion and embezzlement does not resuscitate it. Under New York law conversion is "the unauthorized assumption and exercise of the right of ownership over goods belonging to another to the exclusion of the owner's rights." *Peters Griffin Woodward, Inc. v. WCSC, Inc.*, 88 A.D.2d 883, 452 N.Y.S.2d 599, 600 (1st Dep't 1982) (citing *Employers' Fire Ins. Co. v. Cotten*, 245 N.Y. 102, 156 N.E. 629 (1927)). But "an action for conversion cannot be validly maintained where damages are merely being sought for breach of contract." *Fraser v. Doubleday & Co.*, 587 F. Supp. 1284, 1288 (S.D.N.Y. 1984). Rather, the plaintiff "must allege acts that are unlawful or wrongful as distinguished from acts that are a mere violation of contractual rights." *Id.* Plaintiff has not stated a claim on which relief may be granted and his claim for conversion must be dismissed. 28 U.S.C. § 1915 (e)(2)(B)(ii). To the extent he seeks to prosecute defendants for the crime of embezzlement, it is beyond his authority as a private citizen. *Leeke v. Timmerman*, 454 U.S. 83 (1981) (criminal prosecutions are within the province of the prosecutors who have unreviewable discretion over the decision not to prosecute). Accordingly, Count 10 is dismissed.

d. Violations of New York Consumer Protection Act

The New York Consumer Protection Act, codified at Section 349(a) of the New York General Business Law, provides: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in this state are hereby declared unlawful.

Plaintiff has not stated a consumer protection claim under New York General Business Law Section 349 because, even if defendant's conduct falls with the "consumer-oriented ambit" of the statute, "[p]rivate contract disputes, unique to the parties, . . . would not fall within the ambit of the statute." *Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank, N.A.*, 85 N.Y.2d 20, 25-26, 623 N.Y.S.2d 529 (1995) (internal quotation omitted); *see also Exxonmobil Inter-America, Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004) ("plaintiff must allege that the disputed acts or practices have a broader impact on consumers at large" to state a consumer protection claim under New York law); *Infostar Inc. v. Worcester Ins. Co.*, 924 F.Supp. 25, 29 (S.D.N.Y. 1996). Accordingly, plaintiff's deceptive trade practices claim (Count 18) is dismissed for failure to state a claim on which relief can be granted. 28 U.S.C. § 1915(e)(2)(B)(ii).

3. Legal Malpractice Claims

a. Some Malpractice Claims Are Barred by Statute of Limitations

A federal court sitting in diversity jurisdiction will apply the law of the forum state on outcome determinative issues. *See Bank of New York v. Amoco Oil Co.*, 35 F.3d 643, 650 (2d Cir. 1994) (citing *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 80 (1938)). This includes state statutes of limitations governing the timeliness of state law claims. *See Personis v. Oiler*, 889 F.2d 424, 426 (2d Cir. 1989) (citing *Guaranty Trust Co. v. York*, 326 U.S. 99 (1945)). Plaintiff filed the instant action on May 20, 2005. Since many of

plaintiff's allegations concern contracts and lawsuits occurring over ten years ago, the Court afforded plaintiff an opportunity to amend the complaint to state the dates his claims occurred. From plaintiff's amended complaint, it is clear that many of plaintiff's claims are time-barred.

Since the statue of limitations for legal malpractice and conversion under New York law is three years from the date of the alleged malpractice,[6] N.Y. Civ. Prac. L. & R. § 214(3), the following plaintiff's malpractice claims are barred by the statute of limitations: (1) all legal malpractice claims against defendant Garber and his firm since the alleged malpractice occurred between September 9, 1995 and May 24, 1999;[7] (2) malpractice claims against Abakporo and his firm related to plaintiff's claims regarding the 1991-1992 landlord tenant matter;[8] and (3) malpractice claims against Abakporo and his firm for the case against Integrity Medicals filed and settled in and around 1991[9]. Thus, all malpractice claims against defendant Garber and his firm (Count 5), and two malpractice claims against Abakporo and his firm (regarding the landlord tenant matter Abakporo's representation of plaintiff during the case against Integrity Medicals) are dismissed as indisputably meritless because of the statue of limitations defense. 28 U.S.C. §

---

[6] "Under New York law, a malpractice action accrues 'when all the facts necessary to the cause of action have occurred and an injured party can obtain relief in court.'" *Bastys v. Rothschild*, 154 Fed. Appx. 260, 262 (2d Cir. 2005) (quoting *McCoy v. Feinman*, 99 N.Y.2d 295, 301 (N.Y. 2002) (internal citations omitted)). While the action generally accrues from the date the malpractice occurred, "New York's continuous representation doctrine . . . . tolls the statute of limitations . . . where the continuing representation pertains specifically to the matter in which the attorney committed the alleged malpractice. *Id.* (internal quotations and citations omitted.) "In order to invoke the continuous representation doctrine, a plaintiff's allegations must satisfy a two-pronged test demonstrating (1) 'ongoing representation in connection with the specific matter from which the malpractice arose'; and (2) 'clear indicia of an ongoing, continuous, developing and dependent relationship between the client and the attorney.'" *Panigeon v. Alliance Navigation Line*, No. 96 CIV 8350(SAS), 1997 WL 473385, at *4 (S.D.N.Y. Aug. 19, 1997) (quoting *FDIC v. Pelletreau & Pelletreau*, 965 F. Supp. 381, 387 (E.D.N.Y. 1997) (internal quotations and citations omitted)).

[7] *See supra* n.6. As to defendant Garber, legal representation was affirmatively terminated on May 24, 1999 (Compl. ¶ 30.) *See Tapia-Ortiz v. Schulman*, 144 Fed. Appx. 194, 195 (2d Cir. 2005) ("Because, as [plaintiff] concedes, his attorneys had ceased to represent him by the summer of 1995, his claims necessarily accrued before that date.")

[8] *See supra* n. 6. Judgment was rendered in favor of plaintiff in 1992. To satisfy the statute of limitations, the relationship regarding that claim would have had to continue until 2002. Plaintiff has put forth no facts demonstrating a continuous relationship with Abakporo for the ten years after the judgment. Regardless, plaintiff fails to state a malpractice claim on which relief may be granted as there was no attorney-client relationship between the parties regarding the rental of the apartment; rather, Abakporo was in the real estate, tenement and brokerage business (Compl. ¶ 211) and had introduced plaintiff to the landlord and drafted the lease which he signed as guarantor and witness (Compl. ¶¶ 212-215).

[9] *See supra* n.6. Plaintiff has not demonstrated a continuous and developing relationship regarding this claim after the matter was settled in or around 1991.

1915 (e)(2)(B)(i); *Pino v. Ryan*, 49 F.3d at 53.

### b. Remaining Malpractice Claims

Thus, the only malpractice claims which remain (in fact the *only* remaining claims) are plaintiff's claims (1) against defendant Ngati and his firm for Ngati's representation of plaintiff from May 29, 1999 to September 27, 2002, in the state court wrongful termination action which was decided September 28, 2004. *Amadasu v. Bronx Lebanon Hosp. Ctr. Inc.*, 782 N.Y.S.2d 82; and (2) against defendant Abakporo and his firm for Abakporo's representation of plaintiff from 1991 through 2005 in the state court action against two physicians for breach of an independent contractor agreement captioned "*Amadasu v. Parviz Benhuri, MD and Parviz Benhuri MD P.C.*, Index No. 503/91." (Compl. ¶ 155.)

Turning to the heart of plaintiff's allegations, a legal malpractice claim in the State of New York requires plaintiff to demonstrate three elements: the negligence of the attorney, that the negligence was the proximate cause of the damages sustained, and proof of actual damages. *See Mendoza v. Schlossman*, 448 N.Y.S.2d 45, 46 (2d Dep't 1982). "[A] plaintiff must not only prove lack of reasonable care; plaintiff must also establish that he would have been successful in the underlying action, if his attorney had exercised due care." *Parksville Mobile Modular, Inc. v. Fabricant*, 422 N.Y.S.2d 710, 716 (2d Dep't 1979). In other words, plaintiff must establish that "but for" defendants' negligence, plaintiff would have won his case. *See Strook & Strook & Lavan v. Beltramini*, 550 N.Y.S.2d 337, 338 (1st Dep't 1990) (to state a viable legal malpractice claim, plaintiff must show how she "would have prevailed in the underlying action *but for* her attorney's malpractice"); *Parker, Chapin, Flattau & Klimpl v. Daelen Corp.*, 399 N.Y.S.2d 222, 224-225 (1st Dep't 1977) ("The party must show that but for the negligence, the particular result sought by the client would or could have been achieved.").

Plaintiff makes a variety of allegations with respect to his legal malpractice claims. Insofar as the Court is able to sift through them, none establishes the essential elements of a claim for malpractice because none allege that Mr. Amadasu would have ultimately prevailed with regard to his claim "but for" defendants' alleged negligence. However, in an abundance of caution, I decline to dismiss at this stage the remaining malpractice against defendants Ngati, Abakporo and their firms.

### IV. CONCLUSION

Plaintiff's federal claims pursuant to 42 U.S.C. § § 1981, 1985, 1986 and the Constitution are dismissed against all defendants. 28 U.S.C. § 1915 (e)(2)(B)(ii). The following state law claims are dismissed against all defendants: breach of contract, breach of the covenant of good faith and fair dealing, breach of fiduciary duty, gross negligence, negligent misrepresentation, fraud, intentional misrepresentation, and conversion claims.

All legal malpractice against Garber are dismissed, and two of the three claims against Apakporo are dismissed. The only remaining claims to proceed on are the following malpractice claims against defendant Ngati and his firm and defendant Abakporo and his firm:

> (1) the legal malpractice claim against defendant Ngati and his firm for Ngati's representation of plaintiff from May 29, 1999 to September 27, 2002 in the state court wrongful

termination action which was decided September 28, 2004. *Amadasu v. Bronx LebanonHosp. Ctr. Inc.*, 10 A.D.3d 571, 782 N.Y.S.2d 82 (1st Dep't 2004); and,

(2) The legal malpractice against defendant Abakporo and his firm for Abakporo's representation of plaintiff from 1991 through 2005 in the state court action against two physicians for breach of an independent contractor agreement captioned *Amadasu v. Parviz Benhuri, MD and Parviz Benhuri MD P.C.*, Index No. 503/91.

Accordingly, all claims against all defendants are dismissed except the above-listed two claims against Ngati and Abakporo and their law firms.

The Clerk of the Court is directed to remove defendant Garber and his firm from the caption of this action. The Clerk of the Court is directed to serve the complaint, the Court's October 6, 2005 Order, the amended complaint and this Memorandum and Order upon defendants Ngati and Abakporo and their firms at the addresses provided by plaintiff. The Court certifies pursuant to 28 U.S.C. § 1915(a)(3) that any appeal from this order would not be taken in good faith and therefore *in forma pauperis* status is denied for purpose of an appeal. *See Coppedge v. United States*, 369 U.S. 438, 444-45 (1962).

SO ORDERED.

JOSEPH F. BIANCO
United States District Judge

Dated: March 27, 2006
Brooklyn, New York