UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
----------------------------------------------------------X

DARLINGTON AMADASU,

               Plaintiff,

    -against-

SEMA FELIX NGATI, LAW OFFICES
OF S. FELIX NGATI, ERIC ABAKPORO,
and LAW OFFICES OF ERIC ABAKPORO,

               Defendants.

----------------------------------------------------------X

REPORT AND RECOMMENDATION
05 CV 2585 (RRM)(LB)

**BLOOM, United States Magistrate Judge:**

Plaintiff Darlington Amadasu brings this *pro se* diversity action against his former attorneys, Sema Felix Ngati and Eric Abakporo and their respective law firms, alleging legal malpractice. Defendants move for summary judgment pursuant to Rule 56 of the Federal Rules of Civil Procedure. The Honorable Roslynn R. Mauskopf referred defendants' motions to me for a Report and Recommendation pursuant to 28 U.S.C. § 636(b). For the following reasons, it is respectfully recommended that defendants' motions for summary judgment should be granted in part and denied in part.

## BACKGROUND

Defendants Ngati and Abakporo represented plaintiff in two unrelated state court actions.[1] Ngati represented plaintiff in a state court action that arose from plaintiff's termination from a second year medical residency program at Bronx Lebanon Hospital (the "Hospital") in 1993. (Docket entry 62-1, Aff. in Supp. of Mot. for Summ. J. ("Ngati Aff."), ¶¶ 3, 11.) Eighteen years later, plaintiff continues to litigate the issues related to his termination.

---

[1] Plaintiff's amended complaint includes claims regarding a third attorney and other state court proceedings. However, those claims were dismissed by Memorandum and Order dated March 27, 2006. (Docket entry 11.)

1

Plaintiff was a second year medical resident at the Hospital in 1993. (Id. at ¶ 3.) On September 8, 1993, Dr. Margaret Rosenberg, the director of the Family Practice Residency Program, informed plaintiff that his contract would not be renewed for the 1994 to 1995 academic year. (Ngati Aff. at Ex. K, p. 8.) About two weeks later, on September 21, 1993, the Hospital terminated plaintiff for "inappropriate and unprofessional treatment of a 13-year-old female patient in violation of established medical procedures and legal requirements." (Id. at p. 10.) Plaintiff never filed for arbitration as provided for in his contract with the Hospital. (Ngati Aff., ¶ 5.) Instead, plaintiff brought suit in New York State Supreme Court, Bronx County, on March 21, 1994, against the Hospital and Dr. Rosenberg for breach of contract, wrongful termination, negligence and defamation. (Id. at ¶ 6.) Plaintiff's former attorney, who is no longer a defendant herein, failed to prosecute the action and the court dismissed it as abandoned on March 3, 1998. (Ngati Aff. at Ex. B.) Plaintiff retained Ngati to represent him in the wrongful termination action in May 1999. (Ngati Aff., ¶ 7.) The retainer agreement provided that Ngati would be compensated on a continent fee basis and plaintiff would pay a $2,000 retainer fee. (Id. at ¶ 11.) On June 1, 1999, Ngati re-filed plaintiff's action against the Hospital and Dr. Rosenberg. (Ngati Aff., ¶ 11; Ex. C.) Ngati claims that he filed the action without a thorough investigation of the facts because the statute of limitations on the breach of contract claim was about to expire. (Ngati Aff., ¶ 7.)

The Hospital and Dr. Rosenberg moved for summary judgment in December 1999 and Ngati opposed the motions. (Id. at ¶¶ 13-14.) In March 2000, the state court dismissed all of plaintiff's claims, except the breach of contract and wrongful termination claims. (Ngati Aff. at Ex. D.) Following discovery, the Hospital moved for summary judgment on the remaining claims and Ngati opposed the motion on plaintiff's behalf. (Ngati Aff., ¶¶ 15-16.) On July 10,

2002, the state court granted the motion and dismissed the action against the Hospital. (Ngati Aff. at Ex. E.) On September 27, 2002, the state court granted Ngati's application to withdraw as plaintiff's counsel. (Id. at Ex. F.) Ngati claims that plaintiff "refused repeatedly to respect or listen to any legal advise [sic] that I gave him about the case . . . [and] became persistently and verbally abusive." (Ngati Aff., ¶ 17.) The state court granted Dr. Rosenberg's motion for summary judgment on May 7, 2003 and dismissed all remaining claims against her. Amadasu v. Bronx Lebanon Hosp. Ctr., 782 N.Y.S.2d 82 (N.Y. App. Div. 2004). On September 28, 2004, the New York State Appellate Division unanimously affirmed the state court decision. Id. The Appellate Division found that Dr. Rosenberg did not breach plaintiff's medical residency contract by not renewing it because "[t]he contract plainly provided that it was for a one-year term and was renewable only by mutual written agreement." Id. The Appellate Division further found that "plaintiff's subsequent termination from the residency training program prior to the expiration of his contract" that was "based on his inappropriate and unprofessional treatment of a 13-year-old female patient during an unauthorized pelvic examination" did not "furnish grounds for a wrongful termination claim." Id. at 83.

The claim against Abakporo arises from a *pro se* action that plaintiff filed in the Civil Court of the City of New York, Kings County, in 1991 against Parviz Benhuri, M.D. for "breach of [an] independent contractor agreement." (Am. Compl., ¶ 31; Compl., ¶ 155.) On July 22, 1991, plaintiff retained Abakporo to represent him in the case and paid a fee of $1,500.00. (Am. Compl., ¶ 31; Compl., ¶¶ 159-60; Docket entry 63-1, Aff. in Supp. of Mot. for Summ. J. ("Abakporo Aff."), ¶ 9.) In October 1992, the Court entered a default judgment against Dr. Benhuri in the amount of $20,132.00, which was later vacated. (Am. Compl., ¶ 32; Compl., ¶¶ 164-166.) From 1993 through 1998 the case was off the trial calendar. (Am. Compl., ¶ 32;

3

Compl., ¶¶ 168, 179, 202.) Plaintiff alleges that Abakporo failed to prosecute the case after it was restored to the trial calendar in 1998. (Am. Compl., ¶ 32; Compl., ¶¶ 202, 205.) According to Abakporo, plaintiff "was to provide [his] office with a written contract of employment between [plaintiff] and Dr. Benhury [sic] but plaintiff Amadusu failed to provide any document signed by Dr. Benhuri employing him as an ultrasound operator." (Abakporo Aff., ¶ 9.) After Dr. Benhuri testified under oath that he did not have any contract with plaintiff and plaintiff "could not provide the requisite document for prosecution of his case," Abakporo claims that he "could not proceed and the last action on the file was a motion in 1997." (Id.) Plaintiff alleges that Abakporo assured him in 2000, 2003, and 2004 that "settlement negotiation and stay of trial were still ongoing and that he would send a status report to plaintiff." (Am. Compl., ¶ 32; Compl., ¶¶ 207-209.) Plaintiff further alleges that he spoke with Abakporo about the case for the last time on March 25, 2005, when Abakporo informed him that "the case was dead and buried." (Am. Compl., ¶ 32; Compl., ¶ 210.)

## PROCEDURAL HISTORY

Similar to the underlying state court proceedings just described, this case has taken a tortuous path.[2] Plaintiff commenced this *pro se* action on May 20, 2005. (Docket entry 1.) By Memorandum and Order dated October 7, 2005, the Court directed plaintiff to amend his complaint setting forth the bases for his claims. (Docket entry 5.) Plaintiff filed an amended complaint on November 21, 2005.[3] (Docket entry 8.) By Memorandum and Order dated March 27, 2006, the Court dismissed all claims against all defendants except for plaintiff's legal malpractice claims:

---

[2] The Court previously noted that plaintiff has litigated two other *pro se* cases in federal court, "both of which did not proceed smoothly." (Docket entry 11, p. 5.)

[3] Plaintiff's amended complaint refers in large part to the allegations made in the original complaint "for avoidance of redundancy or reduplication." Accordingly, the Court refers herein to plaintiff's allegations in the original complaint.

4

(1) against defendant Ngati and his firm for Ngati's representation of plaintiff from May 29, 1999 to September 27, 2002, in the state court wrongful termination action which was decided September 28, 2004. *Amadasu v. Bronx LebanonHosp. Ctr. Inc.*, 10 A.D.3d 571, 782 N.Y.S.2d 82 (1st Dep't 2004); and (2) against defendant Abakporo and his firm for Abakporo's representation of plaintiff from 1991 through 2005 in the state court action against two physicians for breach of an independent contractor agreement captioned *Amadasu v. Parviz Benhuri, MD and Parviz Benhuri MD P.C.*, Index No. 503/91.

(Docket entry 11.) The Court noted that plaintiff failed to allege that he would have ultimately prevailed in the underlying cases but for defendants' alleged negligence. (Id.) Nonetheless, the Court declined to dismiss those claims in an abundance of caution. (Id.)

The parties conducted discovery until December 8, 2006. (Docket entry 29.) On March 5, 2007, the Court granted defendants permission to move for summary judgment and set the briefing schedule for the motions. (Docket entry 34.) On March 26, 2007, plaintiff moved to compel defendants to respond to his discovery requests. (Docket entry 36.) The Court denied plaintiff's motion to compel as untimely. (Docket entry 37.) As defendants had not electronically filed their motions for summary judgment by June 22, 2007 in accordance with the briefing schedule, the Court directed the parties to prepare a proposed joint pre-trial order. (Docket entry 42.) The civil docket reflects that defendants filed the parties' proposed pretrial order on October 15, 2007; however, defendants' submission was only a blank page. (Docket entry 46.)

On October 15, 2008, the Court directed defendants' counsel to file a status report. By December 30, 2009, defendants still had not filed a status report. The Court ordered defendants to show good cause why sanctions should not be imposed for their failure to comply with the Court's Order and ordered plaintiff to show good cause why this case should not be dismissed for failure to prosecute. Plaintiff submitted sufficient responses to the Court's Order to Show

Cause. (Docket entries 48 and 49.) Defendants responded that their motions for summary judgment were timely served on plaintiff in accordance with the briefing schedule set by the Court, and the Court directed defendants to electronically file their motions as well as proof of timely service upon plaintiff. (Docket entry 52.) On February 15, 2010, defendants filed the motions that were allegedly served upon plaintiff in May 2007. (Docket entries 53 and 54.) However, the Court struck defendants' motions because the affirmations in support of the motions were unsigned and defendants failed to file proof that their motions were served on plaintiff in May 2007. Defendants then requested permission to re-file their motions for summary judgment and Judge Mauskopf referred defendants' request to me.

The Court held a conference on February 16, 2011 to address defendants' request and defendants failed to produce proof that they served plaintiff with their motions for summary judgment in May 2007. (Docket entry 60.) However, following the conference, defendants delivered a copy of their motions for summary judgment to my chambers.[4] The cover letter of the motions was received stamped by the Clerk's Office after hours drop box on June 22, 2007, the day the fully-briefed motions were due. (Docket entry 62-13, p. 1.) Moreover, the affidavit of service attached to the motions reflected that defendants mailed the motions for summary judgment to plaintiff on May 8, 2007. (Id. at pp. 13-14.) As defendants established to the Court's satisfaction that their motions for summary judgment were timely served on plaintiff and deposited in the Court's drop box in accordance with the briefing schedule set by the Court in 2007, the Court granted defendants' request to file their motions for summary judgment *nunc pro tunc*. (Docket entry 65.) The Court directed the Clerk of Court to file defendants' motions for

---

[4] Defendants' counsel requested that the Court accept the original stamped copy of the motions for summary judgment in chambers, as he stated the "received stamp" would not be readable if electronically filed. (Docket entry 61.)

summary judgment and to send the motions to plaintiff.[5] (Id.) The Court further directed plaintiff to file his opposition to defendants' motions for summary judgment by April 7, 2011. (Id.)

Instead of opposing defendants' motions for summary judgment, plaintiff moved pursuant to Rule 56(d) of the Federal Rules of Civil Procedure for additional time to conduct discovery. (Docket entry 66.) On April 14, 2011, the Court denied plaintiff's motion and afforded plaintiff one last chance to oppose defendants' motions for summary judgment. (Docket entry 67.) Plaintiff failed to oppose defendants' motions by May 13, 2011 as directed. Instead, plaintiff appealed the Court's April 14, 2011 Order to Judge Mauskopf. (Docket entry 68.) Judge Mauskopf denied plaintiff's appeal and denied plaintiff's request for an extension of time to oppose defendants' motions, finding that "plaintiff has had ample time and opportunity to oppose defendants' motions for summary judgment." (Docket entry 69.) As plaintiff has not filed any opposition to defendants' motions, despite being provided the chance to do so, defendants' motions for summary judgment shall be considered unopposed.

## DISCUSSSION

### I. Standard of Review

Summary judgment should be granted where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.

---

[5] Plaintiff was provided with the requisite Notice to a Pro Se Litigant, pursuant to Rule 56.2 of the Local Civil Rules of the United States District Courts for the Southern and Eastern Districts of New York. (Docket entry 64.) However, defendants have not submitted "a separate, short and concise statement" of the allegedly undisputed material facts, set out in numbered paragraphs, on which defendants rely in arguing that there is no genuine issue to be tried, as required by Local Civil Rule 56.1. Local Rule 56.1(a); see Gianullo v. City of New York, 322 F.3d 139, 140 (2d Cir. 2003); Holtz v. Rockefeller & Co., Inc., 258 F.3d 62, 72 (2d Cir. 2001). "Failure to submit such a statement may constitute grounds for denial of the motion." Local Civ. R. 56.1(a). "Courts have, however broad discretion to determine whether to overlook a party's failure to comply with local court rules, and may opt to conduct an assiduous review of the record even where one of the parties has failed to file such a statement." Gilani v. GNOC Corp., No. 04-CV-2935 (ILG), 2006 U.S. Dist. LEXIS 23397, at *4-5 (E.D.N.Y. Apr. 25, 2006) (internal quotation marks and citation omitted). Accordingly, the instant motions are being determined based on the record, such as it is.

R. Civ. P. 56(a). A fact is material if it is one that "might affect the outcome of the suit under the governing law." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). "An issue of fact is 'genuine' if 'the evidence is such that a reasonable jury could return a verdict for the nonmoving party.'" McCarthy v. Dun & Bradstreet Corp., 482 F.3d 184, 202 (2d Cir. 2007) (quoting Anderson, 477 U.S. at 248); see also Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986); Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586-87 (1986). "The trial court's function in deciding such a motion is not to weigh the evidence or resolve issues of fact, but to decide instead whether, after resolving all ambiguities and drawing all inferences in favor of the non-moving party, a rational juror could find in favor of that party." Pinto v. Allstate Ins. Co., 221 F.3d 394, 398 (2d Cir. 2000); see also Baker v. Home Depot, 445 F.3d 541, 543 (2d Cir. 2006) (resolving all ambiguities and drawing all inferences in favor of the non-moving party on summary judgment). For the purposes of defendants' motions for summary judgment, even though plaintiff has not opposed the motions, the facts are still viewed in the light most favorable to plaintiff.

The non-moving party must provide "affirmative evidence" from which a jury could return a verdict in its favor. Anderson, 477 U.S. at 257. "Conclusory allegations, conjecture, and speculation . . . are insufficient to create a genuine issue of fact." Niagara Mohawk Power Corp. v. Jones Chem., Inc., 315 F.3d 171, 175 (2d Cir. 2003) (quoting Kerzer v. Kingly Mfg., 156 F.3d 396, 400 (2d Cir. 1998)). Moreover, "[t]he 'mere existence of a scintilla of evidence' supporting the non-movant's case is also insufficient to defeat summary judgment." Id. (quoting Anderson, 477 U.S. at 252). Here, because plaintiff is proceeding *pro se*, we read his papers "liberally and interpret them to raise the strongest arguments that they suggest." Brownell v. Krom, 446 F.3d 305, 310 (2d Cir. 2006) (quoting Jorgensen v. Epic/Sony Records, 351 F.3d 46,

50 (2d Cir. 2003) (internal quotation marks omitted)). Even though plaintiff has not opposed defendants' motions, the Court must still determine whether defendants are entitled to judgment as a matter of law. See Amaker v. Foley, 274 F.3d 677, 681 (2d Cir. 2001) (Where the non-moving party "chooses the perilous path of failing to submit a response to a summary judgment motion, the district court may not grant the motion without first examining the moving party's submission to determine if it has met its burden of demonstrating that no material issue of fact remains for trial."); Champion v. Artuz, 76 F.3d 483, 486 (2d Cir. 1996) ("The fact that there has been no response to a summary judgment motion does not, of course, mean that the motion is to be granted automatically.").

## II. Plaintiff's Legal Malpractice Claims

Plaintiff claims that his former attorneys Ngati and Abakporo committed legal malpractice in two unrelated state court actions. "In a diversity action based on attorney malpractice, state substantive law, here that of New York applies." Nordwind v. Rowland, 584 F.3d 420, 429 (2d Cir. 2009). Under New York law, a plaintiff must establish "(1) attorney negligence; (2) which is the proximate cause of a loss; *and* (3) actual damages." Achtman v. Kirby, McInerney & Squire, LLP, 464 F.3d 328, 337 (2d Cir. 2006) (emphasis in original). "For a defendant in a legal malpractice case to succeed on a motion for summary judgment, evidence must be presented in admissible form establishing that the plaintiff is unable to prove at least one of these essential elements." Carney v. Philippone, 332 F.3d 163, 167 (2d Cir. 2003) (citations omitted).

In order for an attorney's representation to be negligent, his or her conduct must "[fall] below the ordinary and reasonable skill and knowledge commonly possessed by a member of his profession." Achtman, 464 F.3d at 337. "[A]n attorney is not held to a rule of infallibility, and

9

is not liable for an honest mistake of judgment where the proper course of action is open to reasonable doubt." DaSilva v. Suozzi, English, Cianciulli & Peirez, P.C., 649 N.Y.S.2d 680, 683 (N.Y. App. Div. 1996). Rather attorney malpractice is generally limited to "ignorance of the rules of practice, failure to comply with conditions precedent to suit, or for his neglect to prosecute or defend an action." Achtman, 464 F.3d at 337.

To satisfy the proximate cause and actual damages elements of the standard, plaintiff must demonstrate that "but for the attorney's negligence, what would have been a favorable outcome was an unfavorable outcome." Stonewell Corp. v. Conestoga Title Ins. Co., 678 F. Supp. 2d 203, 209 (S.D.N.Y. 2010). In other words, plaintiff must "meet a 'case within a case' requirement, and must demonstrate that a reasonable fact-finder could conclude that a 'reasonable fact-finder in the underlying suit would have arrived at a different result but for the attorney's negligence.'" Rubens v. Mason, 527 F.3d 252, 255 (2d Cir. 2008).

### A. Plaintiff's Malpractice Claim Against Ngati and His Law Firm

Ngati argues that plaintiff has failed to demonstrate that he was negligent in his representation of plaintiff or that plaintiff would have prevailed in his claims against the Hospital and Dr. Rosenberg but for Ngati's negligence. (Ngati Aff., ¶ 26.) Plaintiff alleges that Ngati did not competently oppose defendants' motions for summary judgment, did not conduct "crucial discovery" such as deposing defendants on July 11, 2001, and failed to prosecute the remaining breach of contract and wrongful termination claims from March 2000 until July 2001. (Am. Compl., ¶¶ 26-27; Compl., ¶¶ 85-88, 99, 107.)

The instant record reflects that Ngati represented plaintiff in the wrongful termination action against the Hospital and Dr. Rosenberg from the end of May 1999 to September 27, 2002. (Ngati Aff., ¶¶ 11, 18.) On June 1, 1999, Ngati re-filed plaintiff's wrongful termination action,

which had been dismissed in 1998 for another attorney's failure to prosecute. (Id. at ¶¶ 6, 11.) Prior to discovery, the Hospital and Dr. Rosenberg moved for summary judgment and Ngati opposed their motions. (Id. at ¶ 14.) The state court granted defendants' motions for summary judgment in part and dismissed all claims except the breach of contract and wrongful termination claims. (Ngati Aff. at Ex. D.) After Ngati filed a note of issue and plaintiff was deposed, the Hospital again moved for summary judgment and Ngati opposed the motion. (Ngati Aff., ¶¶ 15-16.) The state court granted the Hospital's motion for summary judgment and dismissed the remaining claims against the Hospital. (Ngati Aff. at Ex. E.) Shortly thereafter, the state court permitted Ngati to withdraw from the case. (Id. at Ex. F.) Despite plaintiff's allegations of negligence, the instant record reflects that Ngati's actions on the case were reasonable as a matter of law. See Diamond v. Sokol, 468 F. Supp. 2d 626, 633 (S.D.N.Y. 2006) ("Reasonableness of a defendant-attorney's conduct may be determined as a matter of law. In other words, defendant is entitled to summary judgment dismissing the case, where the record reveals no way a reasonable factfinder could find defendant to have been negligent.") (citations omitted).

Even if Ngati were negligent in his representation of plaintiff, plaintiff cannot show that he would have prevailed in his claims against the Hospital and Dr. Rosenberg but for Ngati's negligence. The state court found that most of plaintiff's tort claims were barred by the applicable statute of limitations. (Ngati Aff. at Ex. D, pp. 5-6.) Indeed, these claims were time-barred years before plaintiff retained Ngati to re-file the action against the Hospital and Dr. Rosenberg in 1999. See N.Y. C.P.L.R. 215(3) (one year statute of limitations for intentional torts); N.Y. C.P.L.R. 214(5) (three year statute of limitations for personal injury claims). Regarding plaintiff's timely defamation claim against the Hospital for continuing to inform potential employers of the alleged sexual abuse, the state court found that the Hospital's

communication of plaintiff's professional misconduct to prospective employers was protected by qualified privilege. (Ngati Aff. at Ex. D, p. 5.) As for plaintiff's breach of contract claim, the state court found that the Hospital's decision not to renew plaintiff's contract for the next academic year could not be a breach of contract as a matter of law because the plain language of the contract provided the Hospital the right not to renew without reason. (Ngati Aff. at Ex. E, p. 4.) Finally, as for plaintiff's wrongful termination claim, the state court found that plaintiff failed to present admissible evidence that the pelvic exam performed by plaintiff was proper medical procedure and therefore could not demonstrate that the Hospital's decision to terminate plaintiff was arbitrary or capricious. (Id.) On this record, plaintiff cannot demonstrate that he would have prevailed on any of his claims against the Hospital or Dr. Rosenberg but for Ngati's negligence.

Accordingly, defendants' motion for summary judgment should be granted on plaintiff's legal malpractice claim against Ngati and his law firm.

### B. Plaintiff's Malpractice Claim Against Abakporo and His Law Firm

Abakporo first argues that this Court lacks subject matter jurisdiction over plaintiff's claim against him under 28 U.S.C. § 1332. Abakporo contends that "[t]here is no connection between the different defendants named under this index number, thus the jurisdictional requirement of $75,000.00 should not be cumulative rather defendant Abakporo must stand individually and plaintiff must show that the aggregate liability of the claims against defendant Abakporo is not less than $75,000.00." (Abakporo Aff., ¶ 6.)

In order to maintain an action in federal court based on diversity jurisdiction, the amount in controversy must exceed $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). The Court "measure[s] the amount in controversy as of the date of the complaint. Once jurisdiction

has attached, it cannot be ousted by subsequent events." Scherer v. Equitable Life Assurance Soc'y of U.S., 347 F.3d 394, 397 (2d Cir. 2003). There is a "a rebuttable presumption that the face of the complaint is a good faith representation of the actual amount in controversy," and "[t]o overcome the face-of-the-complaint presumption, the party opposing jurisdiction must show to a legal certainty that the amount recoverable does not meet the jurisdictional threshold." Id. (internal quotation marks and citations omitted). There is "a high bar for overcoming this presumption." Id.

As a preliminary matter, by Memorandum and Order dated March 27, 2006, the Court decided that it has subject matter jurisdiction under 28 U.S.C. § 1332 over plaintiff's remaining state law claims. (Docket entry 11, p. 9.) Relying on plaintiff's statements in the amended complaint regarding the amount of damages he should have been able to recover in the underlying actions, the Court held that "plaintiff's claims exceed the jurisdictional amount." (Id.) Accordingly, Abakporo's instant motion challenging whether plaintiff meets the requisite jurisdictional amount in controversy should not be entertained.

However, even if the Court were to consider the issue, Abakporo has failed to show to a legal certainty that the amount in controversy is less than $75,000. Plaintiff commenced this action against three separate attorneys who had represented him in various state court matters. As plaintiff's claims against the other two attorneys were wholly unrelated to Abakporo, the Court agrees with Abakporo that plaintiff cannot aggregate his claims against multiple defendants to satisfy the requisite jurisdictional amount. See Esmilla v. Cosmopolitan Club, No. 09 Civ. 10169 (DF), 2011 U.S. Dist. LEXIS 23784, at *12 (S.D.N.Y. Mar. 3, 2011) ("A plaintiff may satisfy the jurisdictional minimum by aggregating claims against multiple defendants when their liability is common, undivided, or joint.") (citing E. R. Squibb & Sons, Inc. v. Accident &

Cas. Ins. Co., 160 F.3d 925, 933-35 (2d Cir. 1998)). Plaintiff's amended complaint asserts various claims against Abakporo that related to three distinct matters – a case against Integrity Medicals, a case against Dr. Benhuri, and a case involving a landlord-tenant issue. Although only plaintiff's malpractice claim related to the Benhuri matter survives, Abakporo does not demonstrate to a legal certainty that plaintiff's original claims against him did not meet the jurisdictional threshold. Accordingly, the Court has subject matter jurisdiction over plaintiff's remaining claim against Abakporo and his firm pursuant to 28 U.S.C. § 1332 and defendants' motion for summary judgment on this ground should be denied.

Secondly, Abakporo argues that plaintiff's legal malpractice claim is barred by the statute of limitations.[6] Abakporo contends that "[p]lainitff's claim on Benhuri which was filed in Court sometime in 1991 is statute barred as the last action taken on that file was sometime in 1997." (Abakporo Aff., ¶ 3.) Again, by Memorandum and Order dated March 27, 2006, the Court decided that this claim was not time-barred under the continuous representation doctrine. (Docket entry 11, pp. 14-15.)

However, even if the Court were to revisit the timeliness of plaintiff's malpractice claim, there is a genuine dispute of material fact regarding when Abakporo's representation of plaintiff ended in the Benhuri matter. The statute of limitations on a legal malpractice claim in New York is three years. N.Y. C.P.L.R. 214(6). "It is well-established that a cause of action for legal malpractice accrues on the date of the allegedly improper action, not on the date the malpractice was discovered." Xie v. Lin, No. 06 Civ. 142 (HB), 2007 U.S. Dist. LEXIS 8771, at *10 (S.D.N.Y. Feb. 7, 2007). However, the statute of limitations may be "tolled by the continuous representation doctrine until the date that the representation in the specific matter at issue was terminated." Carvel v. Ross, No. 09 Civ. 0722 (LAK)(JCF), 2011 U.S. Dist. LEXIS 25203, at

---

[6] Abakporo needlessly argues that other claims which were already dismissed are time-barred.

14

*37 (S.D.N.Y. Feb. 16, 2011) (internal quotation marks and citation omitted). "Continuous representation requires that the parties possess a mutual understanding of the need for further representation on the specific subject matter underlying the malpractice claim," that "[t]he parties [] explicitly contemplate that the professional relationship continue, and that the continued representation occur in connection with the particular transaction which is the subject of the action." Arnold v. KPMG LLP, 543 F. Supp. 2d 230, 236 (S.D.N.Y. 2008) (internal quotation marks and citations omitted).

Plaintiff commenced this action on May 20, 2005. (Docket entry 1.) Plaintiff claims that Abakporo represented him on the Benhuri matter through March 25, 2005, when Abakporo informed him that "the case was dead and buried." (Am. Compl., ¶ 32; Compl., ¶ 210.) Plaintiff also claims that he spoke with Abakporo regarding the status of the case in 2000, 2003, and 2004. (Am. Compl. ¶ 32; Compl., ¶¶ 208-09.) Abakporo does not state when his representation of plaintiff ended, only that "the last action on the file was a motion in 1997." (Abakporo Aff., ¶ 9.) On this record, there is a genuine dispute of material fact regarding when Abakporo's representation of plaintiff ended on the Benhuri matter. Accordingly, defendants' motion for summary judgment should be denied as it relates to the timeliness of plaintiff's action against Abakporo and his law firm.

Finally, Abakporo argues that he is entitled to summary judgment because plaintiff has failed to state a cause of action for legal malpractice. Plaintiff alleges that he filed a *pro se* action in the Civil Court of the City of New York, Kings County, in 1991 against Parviz Benhuri, M.D. for "breach of [an] independent contractor agreement." (Am. Compl., ¶ 31; Compl., ¶ 155.) On July 22, 1991, plaintiff retained Abakporo to represent him in the case against Dr. Benhuri. (Am. Compl., ¶ 31; Compl., ¶¶ 159-60.) Plaintiff claims that Abakporo allowed the

case to lay dormant, off of the trial calendar, from 1993 through 1998, and that Abakporo failed to prosecute the case after it was restored to the trial calendar in 1998. (Am. Compl., ¶ 32; Compl., ¶¶ 168, 179, 202, 205.) Plaintiff further alleges that he spoke with Abakporo about the case for the last time on March 25, 2005, when Abakporo informed him that "the case was dead and buried." (Am. Compl., ¶ 32; Compl., ¶ 210.)

In support of the instant motion, Abakporo presents an incredibly thin record, consisting only of a six page affirmation.[7] Abakporo does not state what actions he took in his representation of plaintiff, except that in 1991 Abakporo "received the sum of $1,500 for [the] filing of three separate actions, one [of which] was against Pervis Benhuri MD," and "the last action on the file was motion in 1997." (Abakporo Aff., ¶ 9.) Abakporo does not attach any court filings or orders related to the underlying case, nor does he state when and how the case was resolved. Abakporo has failed to demonstrate that there is no genuine dispute as to any material fact regarding his representation of plaintiff in the Benhuri matter.

Abakporo appears to argue that plaintiff could not have prevailed against Dr. Benhuri because plaintiff failed to provide a copy of his written employment contract with Dr. Benhuri. Abakporo states that "Dr. Benhuri did state under oath that he does not have any contract of employment with plaintiff" and "[w]hen Amadasu could not provide the requisite document for prosecution of his case I could not proceed and the last action on the file was a motion in 1997." (Id.) Abakporo argues that plaintiff's "entire action for breach of employment contract hinged" on the document that plaintiff never provided to him. (Id.) However, Abakporo's argument fails for two reasons. First, a written contract would not have been required to proceed on plaintiff's breach of contract claim if the term of plaintiff's employment with Dr. Benhuri was less than one

---

[7] Abakporo's affirmation includes only one paragraph regarding his representation of plaintiff in the Benhuri matter. (Abakporo Aff., ¶ 9.)

16

year. See N.Y. GEN. OBLIG. LAW § 5-701(a)(1). Second, plaintiff may have been able to testify to the contents of the unproduced employment contract.[8]

Abakporo has failed to submit record evidence to support his motion for summary judgment. Accordingly, upon the instant record, defendants' motion for summary judgment should be denied on plaintiff's legal malpractice claim against Abakporo and his law firm.

## CONCLUSION

For the reasons set forth above, it is respectfully recommended that defendants' motions for summary judgment should be granted in part and denied in part. Defendants' motion for summary judgment should be granted on plaintiff's legal malpractice claim against Ngati and his law firm. Defendants' motion for summary judgment should be denied on plaintiff's legal malpractice claim against Abakporo and his law firm.

---

[8] "The oft-mentioned and much misunderstood best evidence rule simply requires the production of an original writing where its contents are in dispute and sought to be proven." Schozer v. William Penn Life Ins. Co. of N.Y., 644 N.E.2d 1353, 1355 (N.Y. 1994) (internal quotation marks and citation omitted). "Under a long-recognized exception to the best evidence rule, secondary evidence of the contents of an unproduced original may be admitted upon threshold factual findings by the trial court that the proponent of the substitute has sufficiently explained the unavailability of the primary evidence and has not procured its loss or destruction in bad faith." Id. (citations omitted).

## FILING OF OBJECTIONS TO REPORT AND RECOMMENDATION

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have fourteen days from service of this Report to file written objections. See also Fed. R. Civ. P. 6. Such objections shall be filed with the Clerk of the Court. Any request for an extension of time to file objections must be made within the fourteen-day period. Failure to file a timely objection to this Report generally waives any further judicial review. Marcella v. Capital Dist. Physicians' Health Plan, Inc., 293 F.3d 42 (2d Cir. 2002); Small v. Sec'y of Health and Human Servs., 892 F.2d 15 (2d Cir. 1989); see Thomas v. Arn, 474 U.S. 140 (1985).

SO ORDERED.

/Signed by Judge Lois Bloom/

LOIS BLOOM
United States Magistrate Judge

Dated: August 15, 2011
       Brooklyn, New York